May it please the Court, P. Joseph Sandoval for the Petitioners. Petitioner would like to reserve two minutes for rebuttal. As a threshold matter, this case arises from the denial of an asylum at the trial court in Los Angeles in January of 2000. The denial was based upon an adverse credibility finding which was predicated on documentary evidence which the petitioner did not have a reasonable opportunity to explain. In fact, one document was submitted by the INS at the 11th hour and 59th minute of the trial, just moments before the judge requested closing arguments. Petitioner will address the following two issues. First, whether the adverse credibility finding was an error, and secondly, and briefly, whether the streamlining procedures were appropriate in this case. Petitioners will show that, first, that after consideration of the novel and compelling facts of this case, the adverse credibility finding was error in light of the logic and reasoning of Campos-Sanchez v. INS 164F3R48, and, two, that these novel and compelling facts preclude the use of the streamlining procedures as the error was not harmless, in fact, it was material, and that Campos-Sanchez controlled and that a novel factual situation existed. I'd like to now move on to the facts that we believe support our case. Kennedy. You're still adhering to the one-judge affirmation of the ALJ is a lesser process? Bursch. Yes, that's correct, Your Honor. This was an affirmation without an opinion, and therefore, the IJ's decision was the final agency decision. Kennedy. Okay. Bursch. Here, the petitioner, Mr. Tikhnov, was in the Russian military. He testified that he left Russia because of persecution that he suffered while in the military, that he had a fear of return because of his political opinion, an opinion imputed upon him and potentially membership in a particular social group. He came to the United States, and he filed an asylum application affirmatively in December of 1992, which was marked into the record as Exhibit No. 2. Coupled with that Exhibit No. 2 was an affidavit also signed and dated December of 1992, which was in the record of proceedings as Exhibit No. 4. For reasons that are not explained adequately in the record, many five years later, in February of 1997, the petitioner submitted a second asylum application, which was marked into the record as Exhibit No. 3. Attached to that was an affidavit, which was later marked into the record of proceedings as Exhibit No. 3A. Notably, the timing of Exhibit No. 3A becomes important, because Exhibit No. 3A was not submitted before direct examination or cross-examination or redirect examination, but it was submitted only moments before closing arguments were accepted. This critical Exhibit No. 3A later became one of the reasons that the immigration judge found that there was an adverse credibility to the petitioner. Direct examination was conducted by Petitioner's former counsel. Well, let me just make sure I understand. The — your client submitted a second application, correct? That's correct. But did his trial counsel not know that? I mean, are you saying that this second application came as a complete surprise to his lawyer at the hearing? According to the record, no. And, in fact, it was submitted into the record of proceedings as a documentary evidence prior to the initiation of direct examination. So he knew about it, yes. What's wrong with that? I don't understand what your point is. Maybe I missed something. Well, there's nothing wrong with being advised of different documents that are going to be referred to, possibly. The problem in this case arises when there is no direct examination, no cross-examination, no direct examination by the immigration judge, and no notice at all that there's any issues regarding adverse credibility based upon these documents. And then, only after the fact, in the oral decision, does the immigration judge's logic and reasoning show that she believed that there was adverse credibility based upon the inconsistent statements. How does this differ from any normal trial where, during deliberations, the fact-finders review the documentary exhibits, compare what's contained in it with the testimony that they heard at trial, and decide that they're not going to believe the testimony of the witness because the oral testimony is contradicted by the contents of documents that the witness prepared at a court? Well, in the context of a civil trial, it may be a little different. But in the context of the immigration proceeding itself, in the context of the immigration proceedings, as they're run in front of the immigration court and the executive office of immigration review. They're still civil. That's correct, Your Honor. I mean, are you arguing that an immigration judge can never discredit the testimony of a petitioner based upon a prior inconsistent written statement by that petitioner unless the petitioner is given an opportunity and confronted with that inconsistent statement during his testimony at the hearing? Is that the rule you're urging us to follow? Yeah. We're asking for an extension of Campos v. Santos. And we're asking that it be extended so that the immigration judge, only in the immigration judge's oral decision, can they start to formulate all of this without ever giving anybody any notice that these issues are a concern to the immigration judge. How should it be different in an immigration civil case than it is in a normal civil trial or in a criminal case? In the immigration cases, everybody has a duty. Certainly the Respondent's Attorney has a duty and the Respondent has a duty. That's not the truth. Correct. And the question is, what may the immigration judge properly consider in deciding whether or not a witness is credible or not? And I don't see how that is any different from a fact finder in a normal civil trial or in a criminal trial trying to determine whether somebody who testified under oath was telling the truth or not. Because the immigration judge and the prosecutor in this case has a duty to see that justice is done. Well, so does the prosecutor and the judge in a criminal case. And so do the family lawyers in civil cases. But the Board of Immigration Appeals in the matter of SMJ, I believe, has specifically said that, you know, there are issues that should be developed by everybody. And this was an issue that was not developed. And it was as if there were two trials here, Your Honor. The first trial was the one where testimony was taken, questions were asked by the immigration judge on direct. That trial was closed. And then all of a sudden there was a second trial stepping back behind the ropes, a trial where the immigration judge had tallied all of the issues based upon what she had seen in the record on these prior written statements, and then checked them off as being inconsistent with the testimony without ever giving the Petitioner an opportunity to reasonably explain. And that's what Campos Sancho said, that if there's going to be an independent review, and I proffer that the immigration judge's review of these statements without asking for any explanation whatsoever was an independent review. It was a second trial, if you will. And Let me ask you a question so I get this in my mind, firmly in mind. So were those papers introduced into evidence by the INS attorney? One of them was. Exhibit 3A was introduced by the Immigration District Council, after all the parties had arrested and after the immigration judge had asked for closing arguments. Introduced at that? Exactly. There was no questioning whatsoever regarding 3A. Let me ask you this. When it was introduced, did the District Council say that it's being offered for a certain purpose? On the record, it's vague, it's ambiguous exactly why it was entered. It seems that it was more to complete the record. What did the person say? Oh, I've got, you know, we're starting everything, all the evidence is in. Oh, I've got this document that I want to put into evidence. In the record of proceedings at page 109, states Ms. Rolls to the judge, no other questions, Your Honor. This is after the immigration judge asked for closing arguments. But there is, I do have one other matter in regards to the evidence. I believe we had, but my understanding is the attachment, the declaration attached to the second I-589 was not in the court's record. But there was no indication at all during this colloquy that there was anything in Exhibit No. 3A that the Assistant District Counsel deemed to bear upon credibility issues. It was as if she had just handed it to the judge and said, here. There was some on the record and apparently some off the record discussion regarding its origin, but it was accepted. And then after it was accepted, again, the immigration judge did not ask, why are you introducing this? Do we have any questions about this? What is the relevance of this? The immigration judge asked on page 113, I'm ready now to hear closing arguments. And then she refers to the response of Turner. Well, was the immigration document previously admitted to evidence without the attached exhibit? Is that what happened? It appears from the record that So she says, I mean, the offer then is to just complete the document that was already admitted into evidence in its original form. It appears that Exhibit No. 3 was the asylum application, the I-589 form. Yeah. And the affidavit was a separate document which was supposed to be attached to the I-589, but for some reason it's not. But when originally given to the service, was attached? Pardon? I mean, it's not a Johnny-come-lately document that was created after the evidence record was closed, is it? The record does not fully indicate the prior offered exhibit, right? It does seem like it was not attached to the I-589. Never, ever. It would have been attached apparently when it was originally submitted to the Immigration Service, not the Immigration Court, in the affirmative and final defense. It's part of the administrative file of the Immigration Service, is it not? Yes. And therefore, it would be the duty of the Immigration Service to file that Complete document. Yes, with the court. And they didn't complete that submission until after the close of evidence. Well, but was that document available to the Immigrants' Council? The record does seem to reflect, and again, the record is not extremely clear on this, but he may have had a copy of it. It's not clear. What is clear is that the Immigration Assistant District Counsel had to get the copies. Oh, I see. So, well, I don't know what you're saying. You're saying that the parties, for the first time, got a copy of this document? There was an off-the-record transaction, a stopping of the tape, when the immigration judge did make copies of these documents. But again, the record, I believe, is unclear. It may or may not have been in the possession of the counsel. Did the applicant's attorney move to reopen for further testimony or submit any supplemental proposed additional or contradictory documents? Not at the trial level, Your Honor. After the immigration judge asked for the closing arguments, then they were given. When was it first raised by you, at the BIA level? It was not raised at the BIA level either, other than just generally. For the first time, we're hearing it in the Ninth Circuit. I believe that's correct, Your Honor. Is it waived? It may well, in fact, be waived. Okay. Well, what's the law of waiver on something like this? If, in fact, it wasn't directly addressed at the BIA, then, yes, it would be waived. But you have to look at the BIA appeal by the Respondents' Counsel, and we believe that the Respondents' Counsel did, in fact, address generally, although not as put forth, but generally that the adverse credibility finding based upon these documents, when covered with the testimony or in relation to the testimony, was unfair. It was fundamentally unfair. But there was no objection made on the record to the proffer, right? I'm sorry? No objection was made on the record to the proffer. There was no objection. I see that I have run out of time. In fact, I'm way over time. I'd like to ask that the presiding judge allow me some time for rebuttal. I'll think about it. All right. Be careful. Good morning. May it please the Court. Jamie Dowd on behalf of the Respondent. I want to address the Court's questions with regard to the document that was submitted. The record at 166 through, I believe, 169, indicates that, number one, this was an affidavit that was attached to this asylum application, which was in the record at Exhibit 3. However, the district counsel said, I need to make copies for impeachment purposes and to complete the record, because it wasn't actually attached to the record documents that were before the Court. The immigration judge goes through a little. Well, why wasn't it attached to the record documents before the Court? I'm not exactly sure, Your Honor. How would that counsel know that? Well, what the immigration judge says, he says, for the record, the Court has copied the affidavit, which was attached to Exhibit 3. The service provided the document to the Court. Counsel for Respondent already had the document in his record as part of Exhibit 3. The Court has read the affidavit and marked it as Exhibit 3A to correspond with the asylum application. That's in the opinion? That's in the transcript at 168, 169. So the immigration judge was noting that, although the Court's copy did not have this affidavit, the immigration service had it as submitted with the Respondent's I-589, and the Respondent's counsel also had his personal copy. So the application was the Respondent's submitted application. It wasn't that the immigration service came up with this document as the Court suggested out of thin air at the last minute and said, oh, by the way, here's some document. It was actually submitted by the Petitioner at ---- So if the document was not admitted, the record of the application would be incomplete, right? Correct. Because that was part of the application. And we wouldn't be dealing with a full backdrop on this appeal. Correct, Your Honor. But I would like to address the Court's question in terms of the exhaustion argument. This argument was not raised before the Board in terms of the propriety of the entry of this document, and failure to exhaust it before the Board does mean that the Court cannot address that issue for the first time on appeal. I want to turn to the immigration judge's opinion with regard to the Petitioner's asylum claim. The immigration judge specifically found certain parts that while certain parts of the Petitioner's testimony was credible in terms of the fact that he had served in the Soviet Army and that he was mistreated because of his opposition to the policy of occupying republics and stifling dissent therein through the use of force, that he was persecuted and therefore had a well-founded fear of persecution if he returned. So the immigration judge said, well, if you can't credibly prove that you were mistreated on account of some protected ground, then you fail to meet your burden. And he turned specifically to testimony provided by the Petitioner with regard to, number one, certain treatment that he encountered while he was in the military. Number two, his alleged disagreement with certain Army tactics and the way that his – if they did, that his instructors or superiors learned of that disagreement. And number three, the way that he actually left the military. Because those – He deserted. He deserted. He deserted, correct. But there was some question as to whether he was sent to a certain place and then he At one point he said he just got tired of the military and didn't like it and left. At one point he said he was sent to – he was sent to Moscow to a certain division that he felt was sent to hot spots in order to – Well, I mean, those are the kind of Russians we like. I'm not sure how to comment on that, but – You know, they've got a conscience and they desert all that. All right. Well, there is a question, Your Honor, as to whether or not he deserted because he, as the court states, had a conscience and refused to engage in certain activities that he felt would be immoral or a human rights abuse, et cetera. He stated at one point that he just couldn't take the Army anymore and that he escaped. That's in the record at 278. In 272, he states Army life was unbearable, so he left the Army. 274, 275, he states that he left the Army after he was sent to this certain Zerzhinsky division, which was allegedly the one who went to these hot spots and committed whatever atrocities. That's when he left the Army. So there was some question as to when he left, why he left, and the immigration judge stated that because that was the crux of his claim, that he was being persecuted in the Army and that he didn't want to engage in these activities, if he couldn't prove that that was the case, then he failed to prove his claim. Also, the immigration judge stated that there was no evidence outside of the fact that because he was a deserter and would be prosecuted for desertion, that he had any fear in Russia. And this Court has held that prosecution for desertion does not amount to persecution for purposes of refugee or asylum status. Additionally, he failed to show that there was a subpoena that was issued for him to appear on charges of desertion. He failed to show that, number one, the subpoena was issued in some sort of inappropriate manner or that it was issued for the purpose of persecuting him as opposed to prosecuting him for his desertion. So the immigration judge is finding, number one, based on the failure of him to prove credibly why he left the Army and that it was for some purpose other than just his mere desertion because he was unhappy with what was going on or his position in the Army, etc. And number two, that he was going to be persecuted as opposed to prosecuted. So unless the Court has further questions. Why did the government file no opposition to the stay order? To, I'm sorry, the motion for stay? Yeah. Well, I wasn't the attorney who handled the motion for stay. Does your file reflect what you think the claim was that meritorious? No, Your Honor. And although I don't have those specific documents in front of me, our normal response is to say while we don't oppose the stay, we make no representation as to the merits of the claim. Do you review the merits when you make no opposition? Normally, we do not have the record at the time that we file the no opposition. It's sort of a hollow process then, isn't it? Well, it depends. And I think the Court was addressing, as I was listening to cases earlier, that there's obviously a large flux of these documents being filed. Our office looks at each one and does conduct a separate claim. However, the ones that the service focuses on are number one, aliens who are detained currently, and that the service is therefore in the process of attempting to remove because these aliens are in detention. Those are usually aggravated felons or some sort of other criminal. An alien who is not currently detained either is not on the, I guess, the first list for deportation for several reasons. Number one, it could be because the service doesn't know where this person is. Number two, it just could be because there are no resources to remove that person at that time. Well, you've got a flood of these cases coming through, and what's going to happen is, I mean, every panel on the Ninth Circuit is doing immigration this month. And, you know, this is up to eight cases a day, five days a week. We're carrying out immigration appeals. When all these hit, how are you going to deport these people if you don't have any funds, if you prevail? Well, all I can say is that the service is working as expected. They've dumped the burden on us, and it's coming back in spades. Can you see what's going on? You've got to find the person. You've got to give them a bag and baggage order and round them up, buy them airline tickets, check with the foreign embassy if they'll be accepted. And if they aren't, what are you going to do then? Just put them in a slammer? Well, I agree, Your Honor. It's a problem. I mean, it's a problem that there are so many, number one, aliens who the service cannot find. And number two, there are aliens that the service cannot remove for one reason or another. So the service is trying to remove aliens in an expeditious manner as possible, focusing, number one, on criminal aliens. What if you resist the stays? Then you can keep it moving. Well, we also have to appoint our resources in a certain way. And for us, certain cases, if the alien's not detained, it's not a criminal. Or if the service has no plans to remove an alien in any time in the near future, then we have to kind of shift our resources to aliens that either the service does want to remove in the very immediate future or pose some sort of risk. Has the Attorney General made a public statement to that effect, that that's the enforcement policy of the Department of Justice? No, Your Honor, he has not. I can't believe what I'm hearing. No, Your Honor, he has not. Okay. I mean, as I understand what you said, Ms. Dowd, is when the Attorney General told the Board of Immigration Appeals, you have 18 months to get rid of your 56,000 case backlog, he did not have in his pocket an army of Department of Immigration lawyers and paralegals to process all the appeals that we're getting. Is that what happened? So you're swamped, too. Yes, Your Honor, we are. And you don't have an administrative record when the petitioner's lawyer files the motion for stay, so you can't respond to it because you couldn't say anything intelligent in your response without an administrative record. Correct. That's the answer to Judge Beezer's question? The reason that you filed these notice of non-opposition is we'd love to be able to tell you what this case is about, but we don't know ourselves at this point. Partially it is, Your Honor, and that's what happens in cases such as this one. It's an asylum case and it's not a criminal alien, then we don't have the record. We can't respond. If it's a criminal alien, we attempt to get as many documents as we can within the time that is allowed so that we can file an opposition because we attempt to oppose all of those cases, in which it's a criminal or a detained alien. But in such a case as this where it's an asylum case, the alien is not a criminal and is not detained, then we don't have the documents and we don't have really the resources to focus on a case like that as opposed to another case where we could make an attempt to get the documents and file a response within the time that the court allows us to do so. Well, in this case on December 19th, 2002, your office moved for a 30-day extension of time in which to file a stay response, right? So you are asking for the time to respond so that you can get the record. So you have been getting the records and then actually filing a response. In this case, it was a no response. Well, that's not necessarily the case, Your Honor. We normally file these extension requests in every case because we have... Is that just a delay process? No, Your Honor. So you don't have to go to work and get the record or what? No, Your Honor. We actually, like I said, we're filing those extensions in almost every case because the Executive Office for Immigration Review is having such a problem in producing the records in all the circuits, in all 11 circuits. You're relying on some contractor, as I understand it, that the EOIR has hired to actually pull the administrative record materials together? Correct, Your Honor. And those are not your employees who are doing that? No, sir, they're not. They're not affiliated with our office. So you're automatically moving for extensions of time, but 30 days does not guarantee that you're going to have an administrative record at the end of that time period? Exactly. So it could be the... And like I said, I didn't handle the stay. What I normally do is I try to file some sort of response within the amount of time that we request on extension. So if I were to request 90 days, I try to file a response. If I do not have the record and I know that this is an asylum and a non-detained case, then I would file a non-opposition simply so that I could file within the courts. Okay. If there's a non-opposition, what standard do you think is being applied in the granting of the stay? Is there a statutory standard that we're supposed to look at? There is, Your Honor. And the Court has said it's only... In this case, no judge has ever looked at this stay case. Well, when the stay motion is filed, I guess the panel that the stay motion goes to actually looks to see if... Panel. It never went to a panel. Okay. Well, I'm not sure what the internal procedures with the Court are, but someone looks at... It's a staff attorney that's entering an order for the Court. Okay. The statute requires the Court to do it based on the rule of the Court. Okay. Well... This whole process is rather bizarre. Well, it is, and I agree, Your Honor, that it's because there are so many cases, the Court has made its own internal procedures for how it's going to handle stay motions. That's no excuse for not doing it right. Well, I would agree, Your Honor. But I'm not sure Ms. Dowd is the person to whom we can lay the blame here. Correct. When you see Mr. Ashcroft in the morning... He's back to work now. ...at the Justice Department, then just tell him you're carrying a message from Garcia, and just go over there and talk to him about it. See if you can get his attention. He might get some more help. If I see Mr. Ashcroft, I will do that. Very good. Thank you, Ms. Dowd. Just don't hang out by that statue they have there. It's modestly covered. It's modestly there, yeah. May I have two minutes, Your Honor? Sure. Thank you. At the Board of Immigration Appeals, the prior... Let me ask you this question. Yes. Did the immigration judge make any finding regarding whether there was a well-founded fear of future persecution? The immigration judge stated at page 20 of her oral decision, based upon the adverse credibility finding, there is insufficient evidence to show that the Respondent has suffered persecution or has a well-founded fear of persecution within the meaning of Section 208A of the Immigration and Nationality Act. This entire case went down... So the answer is no. No. The entire case went down based upon the adverse credibility finding of the judge, although there is some contradictory evidence by the judge or a statement by the judge saying that there appeared to be certain facts in common in all of the Respondent's declarations, Exhibit 3A, Exhibit 4, and Exhibit 5. These were all declarations that weren't discussed during the direct or the cross-examination. At the Board of Immigration Appeals, the Respondent's former attorney did say, in his appellate brief, the single fact that the appellant submitted three different statements is not enough reason to consider his whole testimony not credible. Okay. Well, let me ask Ms. Dowd. That's correct, isn't it, that the immigration judge didn't make any well-founded finding on well-founded fear of future persecution? Sorry, Your Honor. I believe that the record reflects that the immigration judge found that even if Mr. Tignoff's testimony was taken as credible, he failed to meet his burden to show either past persecution or a well-founded fear. I'd like to see that. Okay. I can't spend a calendar on immigration. I don't understand the ins and outs of it. Okay. Starting at the record at page 49, the immigration judge is discussing the testimony. He talks about the inconsistencies. The court is not able to determine whether the Respondent was punished because he openly expressed an opposing political opinion or whether he was simply dissatisfied. And then he goes on to say a person will not be eligible for protection based on evasion of military service for a non-specified reason or generalized dislike of military service or fear of combat. And goes on to analyze the claim in terms of Mr. Tignoff's fear of some sort of prosecution for his desertion from the Army. So that is the finding on the merits of the claim, notwithstanding the credibility finding. I don't think so. Is that right? I mean, we've always had this rule of, you know, if you're a deserter or a draft dodger in a foreign country, you can't, you know, you can't use that as a basis for an asylum claim. I agree, Your Honor. So, but I thought you said that assuming that he's credible, he still doesn't qualify for a well-founded fear of future prosecution. Correct, because he failed to show that he would be actually persecuted as opposed to prosecuted, which is what the Court just said, for his desertion, as opposed to actually persecuted for some sort of protected ground, on some sort of protected ground. Your Honor, the immigration judge did. Oh, I have another thing I can tell you. Now, you're, you know, if we want to get this message across, your name is Jamie M. Dowd, right? Yes, sir. You're not related to Maureen Dowd. I am not, and I get asked that. If you get a hold of Maureen, she'd get their attention. Maureen can make the point far better than I could, I'm sure. Tell her. Tell her. Tell her it's her long losses. Exactly. I do get asked that quite a lot. Yeah. Well, I read her. I just love her, and she's so funny. And so tell Maureen, and, you know, straighten everything out. Monday morning. She says it a certain way with words. I agree. Oh, yeah. Oh, yeah. Yeah. I would just like to conclude, Your Honor, with the statement by the immigration judge who said, and she did address some of the statutory factors, the five statutory grounds, but she said, Nevertheless, based upon the adverse credibility finding, the Court cannot say for certain that this treatment was, in fact, based upon Respondent's anti-government political opinion. We do not believe that the immigration judge's decision adequately goes through all of the different goes through the analysis, because it was already infected. It was already decided that it was adverse credibility, so we're not going to go there. We're not going to talk about it. Thank you very much, Your Honor. Thank you. Thank you both. We're going to take a short break.
judges: Pregerson, Beezer, Tallman